# EXHIBIT A

FILED
10/27/2025 10:00 AM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

IN THE CIRCUIT COURT FOR THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | |
|---|---|
| VISUAL PAK, LLC, an Illinois limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MIDVALE INDEMNITY COMPANY, a Wisconsin Corporation,<br><br>Defendant. | Case No. 2025- 2025LA00000943<br><br>JURY DEMANDED |

NOTICE PURSUANT TO LCR - 2-2.14
THIS CASE IS HEREBY SET FOR AN INITIAL CASE MANAGEMENT CONFERENCE IN COURTROOM C204 ON January 29, 2025 AT 9:00 A.M./P.M.
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.

## COMPLAINT

Visual Pak Holdings, LLC, ("Visual Pak") states as follows for its Complaint against Defendant Midvale Indemnity Company ("Midvale"):

### Nature of the Action

1. This is an insurance coverage dispute arising from Midvale's failure to meet its contractual obligation to defend Visual Pak pursuant to an insurance policy Visual Pak purchased from Midvale in litigation asserted against Visual Pak alleging, *inter alia*, a breach of duties owed pursuant to the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1, *et seq.*, ("IDTLSA").

2. Visual Pak seeks to recover the damages that it has incurred because it has been forced to incur the cost of defending itself in litigation pending as *Maria Figueroa, et al v. Visual Pak Holdings, LLC, et al*, pending as Case No. 2025 CH 4411 in the Circuit Court of Cook County, Illinois (the "Underlying Lawsuit") because Midvale breached its contractual duty to defend Visual Pak in that matter. Specifically, in the Underlying Lawsuit, the claimants assert that Visual Pak breached IDTLSA by failing to provide the requisite training to people performing work on its behalf. This allegation falls at least potentially within the coverage of the insurance policy that

Midvale sold to Visual Pak as it alleges an "Employment Practices Wrongful Act" as defined in the insurance policy.

### The Parties

3. Midvale is a Wisconsin corporation with its principal place of business in Madison, Wisconsin.

4. Visual Pak is an Illinois limited liability company with its principal place of business in Waukegan, Illinois.

### Jurisdiction and Venue

5. Jurisdiction is proper in this Court pursuant to 735 ILCS 5/2-209(a)(1), (3), (4), and (7) because the cause of action arises from the transaction of business in Illinois; the ownership, use, or possession of any real estate situated in Illinois; contracting to insure any person, property or risk located within this State at the time of contracting; and the making or performance of any contract or promise substantially connected with Illinois.

6. Venue is proper pursuant to 735 ILCS 5/2-101 as some part of the transaction out of which the cause of action arose occurred in Lake County as the insurance policy was delivered to Visual Pak in Lake County, Illinois, and the workers who filed the underlying IDTLSA lawsuit allegedly worked at a Visual Pak facility in Lake County, Illinois.

### Facts Common to All Counts

A. **The Midvale Policy**

7. Midvale issued a Private Company Management Liability Insurance Policy No. BCP-038739-00, pursuant to which Visual Pak is a Named Insured (the "Policy"). A true and correct copy of the Policy is attached as **Exhibit 1**.

8. The Policy has a policy period effective September 1, 2024, to January 1, 2026, with limits of $2,000,000 for Employment Practices Liability, including defense expenses, subject to a $50,000 deductible.

9. The Policy required Midvale provide defense costs for Visual Pak against any claims made during the period from September 1, 2024, through January 1, 2026 alleging facts potentially within the coverage of the Policy, including but not limited to, any suit seeking damages for "negligent hiring, retention, supervision, evaluation or training of" employees.

10. The Policy is an "eroding limits" insurance policy such that the costs of defense incurred in responding to claims or litigation erode the limits of coverage available under the Policy.

B. **Underlying Claims Asserted Against Visual Pak**

11. In April 2025, Plaintiffs Maria Figueroa, Genaro Vazquez, and Fabian Perez, on behalf of themselves and all other persons similarly situated, filed the Underlying Lawsuit alleging claims against Visual Pak under IDTLSA.

12. In June 2025, Plaintiffs Maria Figueroa, Genaro Vazquez, and Fabian Perez on behalf of themselves and all other persons similarly situated, and the Chicago Workers' Collaborative ("CWC"), as an interested party, filed an amended complaint against Visual Pak and M.M.D. Inc., d/b/a The AllStaff Group ("AllStaff") in the Underlying Lawsuit. A true and correct copy of the amended complaint is attached as **Exhibit 2**.

13. Plaintiffs in both the original and amended complaints allege that Visual Pak failed to comply with the safety and training requirements of Section 85(d)-(e) of the IDTLSA at its facilities in Illinois.

14. Visual Pak was served with the Underlying Lawsuit in May 2025.

3

15. On May 15, 2025, Visual Pak timely tendered to Midvale.

16. That same day, on May 15, 2025, Midvale confirmed receipt of the tender.

17. AllStaff provides Visual Pak with temporary laborers, who are "Employees" as that term is defined within the Policy.

18. The amended complaint alleges that laborers assigned to work at Visual Pak by AllStaff operate multiple packaging lines and machines that perform different functions for Visual Pak's production process and pose unique hazards.

19. The amended complaint alleges that many laborers assigned to work at Visual Pak by AllStaff also have duties involving mixing hazardous chemicals, often at high temperatures.

20. The plaintiffs allege that laborers assigned to Visual Pak by AllStaff were and are constantly rotated to different positions with each position posing new and unique hazards to the laborers.

21. The plaintiffs allege that Visual Pak was obligated to train the laborers Allstaff provided pursuant to Section 85(d)-(e) of the IDTLSA.

22. The plaintiffs allege that Visual Pak failed to provide specific training to laborers assigned by AllStaff to Visual Pak worksites, tailored to the particular hazards at the Visual Pak worksites.

23. The plaintiffs allege that laborers assigned to Visual Pak were expected to learn on the job from observing their co-workers.

24. The plaintiffs further allege that laborers assigned to Visual Pak by AllStaff received little or no training from AllStaff.

25. The amended complaint also alleges that laborers assigned to Visual Pak by AllStaff received no training at all from Visual Pak on how to safely perform their jobs.

26. The plaintiffs claim that laborers assigned to Visual Pak by AllStaff received little or no training from AllStaff when rotated to a different position.

27. The plaintiffs claim that laborers assigned to Visual Pak by AllStaff received little or no training from Visual Pak on how to safely perform their jobs when rotated to a different position.

28. The amended complaint claims that laborers assigned by AllStaff to Visual Pak facilities were regularly required to work near hazardous machines and other hazards without additional training.

29. The amended complaint alleges that some laborers are routinely shifted around to different packaging lines, including to positions that involve operating dangerous, fast-moving packaging machines without receiving any additional training on how to operate the machines and avoid injuries despite the fact that multiple laborers have had their hands injured on these machines.

C. **The Policy Unquestionably at Least *Potentially* Covers the Claim**

30. As defined in the Policy, "**Employment Practices Wrongful Act**" means any actual or alleged:

> 5. breach of any oral, written, or implied employment contract or agreement including, without limitation, any obligation arising out of any employee manual, handbook, or policy statement;

> 8. (e) failure to provide or enforce adequate or consistent corporate employment policies and procedures; or

> (f) negligent hiring, retention, supervision, evaluation or training of **Employees**;

31. As defined in the Policy:

> **Employee** means any natural person whose labor or service was, is or shall be engaged and directed by an **Insured Entity**, including full-time, part-time, seasonal, leased, loaned or temporary employees....

5

32. The "Contractual Liability" exclusion in the Policy states:

> based upon, arising out of, or in any way related to, any actual or alleged liability under any written contract or agreement to which an **Insured Entity** is a party; provided however, that this exclusion shall *not* apply: (i) to the extent that liability would have been incurred in the absence of such contract or agreement;

33. The amended complaint asserts a cause of action against Visual Pak for violating the safety and training requirements of the IDTLSA.

34. The claim asserted in the Underlying Litigation relates to the failure to provide adequate training to the laborers assigned by AllStaff.

35. The AllStaff laborers assigned to Visual Pak are "Employees" as that term is defined in the Policy.

36. This allegation constitutes an "Employment Practices Wrongful Act" as defined in the Policy and does not fall within any exclusion to coverage.

37. The plaintiffs in the Underlying Litigation also allege that Visual Pak failed to provide AllStaff with information about anticipated job hazards for laborers assigned to work at Visual Pak worksites and failed to advise AllStaff and laborers assigned by AllStaff of job hazards not previously covered before the laborers undertook new tasks.

38. This alleged conduct does not fall within the "Contractual Liability" exclusion because the obligation is owed under the IDTLSA.

### D. Midvale's Breach

39. On September 9, 2025 Midvale issued a letter identifying its coverage position and declining coverage for Visual Pak for the Underlying Lawsuit.

40. Midvale claimed that the allegation against Visual Pak was not an Employment Practices Wrongful Act or a Third Party Wrongful Act as those terms are defined in the Policy.

6

41. Midvale asserted in bad faith that the Workers' Compensation, Unemployment, Social Security, Benefit Exclusion as defined in the Policy precluded coverage where there is no allegation in the Underlying Lawsuit that is even potentially within those exclusions.

42. Midvale further alleged in bad faith that the Bodily Injury/Property Damage Exclusion as defined in the Policy precluded coverage despite the fact that the Underlying Lawsuit makes no allegation of Bodily Injury or Property Damage as those terms are defined in the Policy.

43. Midvale then reiterated that it declined to provide coverage.

## COUNT I

### Breach of Contract

44. Visual Pak incorporates paragraphs 1 through 43 as though fully stated herein.

45. The IDTLSA asserts causes of action against Visual Pak for violation of the health and safety provisions of the IDTLSA during the relevant policy period.

46. Visual Pak timely tendered the Underlying Lawsuit to Midvale, demanding a defense against the claims asserted therein.

47. Visual Pak performed its obligations to Midvale under the Policy, including as to its tender of the Underlying Lawsuit.

48. Midvale declined coverage and refused to provide Visual Pak with a defense in the Underlying Lawsuit. A true and correct copy of Midvale's letter denying coverage is attached as **Exhibit 3**.

49. By failing to provide a defense to Visual Pak in the Underlying Lawsuit and repudiating its duty to defend Visual Pak in connection with the Underlying Lawsuit, Midvale failed to fulfill its obligations to Visual Pak under the Policy.

50. Midvale's breach of its obligations to provide Visual Pak with a defense in the Underlying Lawsuit has required Visual Pak to engage defense counsel and fund its own defense

7

costs, including attorneys' fees and other expenses, to defend against the claims asserted in the Underlying Lawsuit.

51. Midvale has sustained actual damages in the form of attorneys' fees and other defense costs and will continue to incur further damages as a consequence of Midvale's breach of its obligation to provide Visual Pak with a defense in the Underlying Lawsuit.

WHEREFORE Plaintiff Visual Pak requests: (i) that judgment be entered in its favor and against Defendant Midvale; (ii) that Visual Pak be awarded the damages caused by Midvale's breach of its obligation to defend Visual Pak in the Underlying Lawsuit, including, without limitation, attorneys' fees and costs; and (iii) such other relief as the Court deems just.

## COUNT II

### Claim for Bad Faith – Section 155

52. Visual Pak incorporates paragraphs 1 through 43 as though fully stated herein.

53. Visual Pak timely tendered to Midvale on May 8, 2025.

54. Midvale failed to respond to Visual Pak's tender until September 9, 2025.

55. Midvale acted in bad faith by improperly delaying its response to Visual Pak's tender and waiting four months to deny that Visual Pak's claim was covered under the Policy.

56. Further, Midvale asserted exclusions including "Workers' Compensation," "Unemployment," "Social Security," "Benefit, "Bodily Injury" and "Property Damage" exclusions despite there being no allegations in the Underlying Lawsuit within the ambit of any of these exclusions.

57. Accordingly, due to the breach of its obligations to Visual Pak, Midvale engaged in vexatious and unreasonable actions in violation of section 155 of the Insurance Code, 215 ILCS 5/155.

58. Pursuant to Section 155 of the Illinois Insurance Code, Visual Pak is entitled to an award of extra-contractual relief as part of the taxable costs, including: reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $60,000; or (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

WHEREFORE, Plaintiff Visual Pak requests that it be awarded: (i) extra-contractual relief as part of the taxable costs, including: reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $60,000; or (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action; and (ii) such other relief as the Court deems just.

**JURY DEMANDED**

Dated: October 22, 2025                    Respectfully submitted,

                                                              VISUAL PAK, LLC.

                                                              By: /s/ David B. Goodman
                                                              One of its attorneys

David B. Goodman – dg@glgchicago.com
  ARDC No. 6201242
Joshua H. Burday – jb@glgchicago.com
  ARDC No. 6320376
Goodman Law Group | Chicago
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
Tel: (312) 626-1888